748 So.2d 1028 (1999)
James E. STEPHENS, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. 92639.
Supreme Court of Florida.
November 24, 1999.
Rehearing Denied January 27, 2000.
*1029 David R. Gemmer, St. Petersburg, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, Chief of Criminal Law, and Patricia A. McCarthy, Assistant Attorney General, Tampa, Florida, for Respondent.
PARIENTE, J.
We have for review State v. Stephens, 707 So.2d 758 (Fla. 2d DCA 1998), based on direct and express conflict with Grossman v. Dugger, 708 So.2d 249 (Fla.1997), as to the standard of appellate review for ineffective assistance of counsel claims. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
After a thorough review of the applicable state and federal law governing ineffective assistance of counsel claims, we have concluded that not only is there conflict between the Second District's decision and this Court's opinion in Grossman, but that Grossman conflicts with our earlier decision in Rose v. State, 675 So.2d 567 (Fla. 1996), on the appellate standard of review. We find that we must recede from our decision in Grossman and adhere to our prior decision in Rose, which is consistent with the precedent of United States Supreme Court and other federal courts on the standard of review for Sixth Amendment ineffective assistance of counsel claims.

FACTS
In this case, Stephens was convicted of battery of a law enforcement officer and resisting arrest without violence. The theory of the defense was that Stephens was a victim of police brutality and that his resistance was self-defense.
To advance this theory it was necessary for defense counsel to impeach the officers' testimony with evidence that Stephens' *1030 large thigh bruise was inflicted by the officers at the time of the incident. An eyewitness, Lisa Stewart, testified that the officers "jerked" Stephens by the arm out of the car, "slammed" him against the rear of the car, and "threw" him to the ground, where one officer held his foot on the side of Stephens' face and another held his knee on Stephens' leg. A coworker of Stephens testified that he did not observe a bruise on Stephens' leg prior to his arrest, but that after his arrest Stephens showed him a large bruise on his thigh and told him that the police caused it.
William Robb testified that he picked up Stephens from jail, took photographs of a large thigh bruise, and drove him to see Dr. L. Michael Weiss for treatment. Robb testified that he took the photographs on March 6, "right after he was released from jail before he went to see Dr. Weiss." After defense counsel moved to admit the photographs into evidence, the State objected, arguing that the photographs did not accurately portray Stephens' bruise immediately following his arrest because they were taken after his release from jail on March 8. Defense counsel initially assured the judge that the photographs were taken on March 6, and the judge admitted the photographs into evidence. However, on cross-examination, Robb clarified that he took the photographs on March 8.
Dr. Weiss testified that the photographs accurately depicted the bruise that he examined on March 8 and that the bruise appeared to be less than one day old. Dr. Weiss opined that if the bruise had been older than one day it would have appeared less swollen and a lighter color. Dr. Weiss conceded on redirect examination that the bruise could have been older than he suspected. Dr. Weiss also testified that Stephens told him that the officers inflicted the bruise.
In the State's rebuttal, Dr. Abraham Wilks, the emergency room physician who treated Stephens, testified that Stephens arrived at the hospital with scrapes on his face and elbow and a large bruise on his thigh. Dr. Wilks explained that the bruise depicted in the defense photographs was at least one day old because of its diffuse discoloration. Dr. Wilks also testified that the bruise was consistent with someone "repeatedly smack[ing] him with a board or object like a flashlight" but that he was unable to state with certainty how the injury occurred.
Stephens was convicted of battery and resisting an officer without violence. Within four weeks of his convictions, Stephens filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, predicated upon ineffective assistance of trial counsel. The evidentiary hearing on the motion was conducted before the same judge that presided over Stephens' trial.
In his motion and at the hearing, Stephens claimed that if his trial counsel had properly presented the bruise evidence, the jury could have concluded that, contrary to the testimony of the officers, the bruise was inflicted by the officers during the struggle at the scene of the arrest. The trial judge granted Stephens' motion and ordered a new trial. The trial judge's order reads, in pertinent part, as follows:
The Defendant also contends that [trial counsel] was ineffective for failing to accurately inform the jury of the correct date that the photographs in evidence were taken. [Trial counsel] failed to correct the witness, Mr. Robb, who testified that the photographs were taken on March 6, rather than on March 8. The State argues that the Assistant State Attorney, Ms. Lynn Flagler, corrected the date on cross-examination of Mr. Robb. However, the State's argument that this cured [trial counsel's] deficiency is not persuasive.
Dr. Wilks testified to the age of the Defendant's bruise as being at least over one (1) day old, by looking at the photographs of the bruise which were taken on March 8, and not from his notes or his independent recollection of his physical *1031 examination of the Defendant. This is evident when Dr. Wilks testified that the photographs were similar to the injury that the Defendant had when he examined him, and then went further to point out to the jury that the yellow discoloration seen in the photographs supported his opinion that the bruise was at least one (1) day old. Since these photographs were taken two (2) days after the incident, then at the time Dr. Wilks examined the Defendant, the bruise was conceivably fresh and not at least (1) day old. [Trial counsel] was ineffective for failing to recognize that Dr. Wilks was testifying from the photographs and failing to communicate this crucial error to the jury.
This error was further compounded when the Assistant State Attorney confirmed with Dr. Wilks that the yellow discoloration that he pointed out to the jury on the photographs would not have been present if the bruise was recent. This deficiency on [trial counsel's] part conceivably prejudiced the Defendant by allowing Dr. Wilks' testimony to adversely affect the outcome of the verdict for the Defendant.
This Court adopts the State's Response in part, refuting the Defendant's claim concerning [trial counsel's] failure to interview and present witnesses, his failure to procure and secure the photographs taken at the jail, his failure to protect the Defendant during the plea colloquy on counts three (3) and four (4) of the Information and during post-trial proceedings, and incorporates and attaches it and its exhibits to this Order.
Further, this Court finds that the Defendant is entitled to relief on his claim that his counsel..., was ineffective in presenting Dr. Wilks' medical testimony to the jury and that this prejudiced the Defendant to the extent that the Defendant was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
(Citations to the record omitted.)
The Second District reversed the order granting a new trial and explained its decision as follows:
A review of the attachments to the trial court's ruling on the 3.850 motion, together with the record of the evidentiary hearing, reveals that there was indeed confusion concerning when Stephens received the bruises depicted in the photographs. Stephens' counsel probably was less than effective in presenting this evidence or in cross-examining Dr. Wilks. Nevertheless, to prevail on a 3.850 motion, the defendant must prove not only that his attorney made errors so serious that he could not be said to have been acting truly as his "counsel," the defendant must also establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Rose v. State, 675 So.2d 567, 569 (Fla. 1996) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Our assessment of the evidence leads us to the conclusion that any alleged, deficiency on the part of Stephens' counsel did not affect the fairness and reliability of the trial so as to undermine confidence in the outcome. See Kennedy v. State, 547 So.2d 912 (Fla.1989). Our conclusion is only bolstered by the extremely weak nature of Stephens' questionable police brutality defense, which was uncorroborated by any other evidence.

Stephens, 707 So.2d at 759 (emphasis supplied).

ANALYSIS
The State takes the position, and we agree, that the "competent substantial evidence" standard announced in Grossman applies to the trial court's factual findings. However, as the State argues, an "appellate court is not required to accord particular deference to a legal conclusion of constitutional *1032 deficiency or prejudice under the Strickland test for evaluating the effectiveness of counsel." (Respondent's Brief at 28). Instead, based on Rose, the alleged ineffective assistance of counsel claim is a mixed question of law and fact, subject to plenary review based on Strickland. See Rose, 675 So.2d at 571 (citing Baxter v. Thomas, 45 F.3d 1501, 1512-13 (11th Cir.1995)). In Rose, we independently reviewed the trial court's legal conclusions as to the alleged ineffectiveness of the defendant's counsel. See id. at 572-73.[1] Indeed, we recently applied this independent standard of review in accordance with United States Supreme Court precedent in Quince v. State, 732 So.2d 1059, 1064 (Fla.1999), in the context of a conflict of interest claim. In addition, there is further precedent in this Court for applying an independent standard of review to mixed questions of law and fact involved in Sixth Amendment claims. See, e.g., Rivera v. State, 717 So.2d 477, 482 (Fla.1998); Van Poyck v. State, 694 So.2d 686, 689-98 (Fla.1997), cert. denied, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); Breedlove v. State, 692 So.2d 874, 877-78 (Fla. 1997); Clark v. State, 690 So.2d 1280, 1282 (Fla.1997).[2]
The less deferential standard of review inescapably follows from Strickland, the seminal ineffective assistance of counsel case, as well as other decisions of the United States Supreme Court on the appropriate standard of appellate review for issues of constitutional magnitude.[3] As the United States Supreme Court explained, ineffectiveness of counsel is a claim based in the Sixth Amendment of the United States Constitution:
The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.
... The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained *1033 or appointed, who plays the role necessary to ensure that the trial is fair.
For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel."
Strickland, 466 U.S. at 685-86, 104 S.Ct. 2052 (citations omitted).
In the context of another constitutional issue, the right to be free from unreasonable searches and seizures, the United States Supreme Court explained the important policy concerns requiring an appellate court to independently review a trial court's legal conclusions in mixed questions of law and fact:
A policy of sweeping deference [to the trial courts' legal conclusions] would permit, "in the absence of any significant difference in the facts," "the Fourth Amendment's incidence to turn on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause." Such varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable.
In addition, the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of and to clarify, the legal principles.

Finally, de novo review tends to unify precedent....
Ornelas v. United States, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (citations omitted) (emphasis supplied). Because the ineffective assistance of counsel claim is based on the Sixth Amendment, we are not at liberty to disregard the United States Supreme Court's decision in Strickland, nor do we find that it is appropriate to abdicate the responsibility of the appellate courts to ensure the correct and uniform application of the law.
The determination of ineffectiveness pursuant to Strickland is a two-pronged analysis: (1) whether counsel's performance was deficient; and (2) whether the defendant was prejudiced thereby. See, e.g., Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Rutherford v. State, 727 So.2d 216, 219-20 (Fla.1998). As the Supreme Court explained in Strickland:
Ineffectiveness is not a question of "basic, primary, or historical fact." Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

Id. at 698, 104 S.Ct. 2052 (citations omitted) (emphasis supplied). Thus, under Strickland, both the performance and prejudice prongs are mixed questions of law and fact, with deference to be given only to the lower court's factual findings.
Further, while the second prong of an ineffectiveness claim is sometimes confused with the prejudice prong of a newly discovered evidence claim, they are distinct. As explained in Strickland:
[T]he newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged. An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of *1034 counsel cannot be shown by a preponderance of the evidence to have determined the outcome.
Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (emphasis supplied) (citation omitted); see Rutherford, 727 So.2d at 220.[4] The second prong of the ineffective assistance of counsel test focuses on the reliability of the proceeding and has never been subject to an abuse of discretion standard of review, contrary to the position taken in Justice Overton's opinion concurring in result. See concurring in result opinion of Overton, Senior Justice, at 1035.
We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact. The deference that appellate courts afford findings of fact based on competent, substantial evidence is an important principle of appellate review. In many instances, the trial court is in a superior position "to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses." Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976). When sitting as the trier of fact, the trial judge has the "superior vantage point to see and hear the witnesses and judge their credibility." Guzman v. State, 721 So.2d 1155, 1159 (Fla.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1583, 143 L.Ed.2d 677 (1999). Appellate courts do not have this same opportunity.
Despite this deference to a trial court's findings of fact, the appellate court's obligation to independently review mixed questions of fact and law of constitutional magnitude is also an extremely important appellate principle. This obligation stems from the appellate court's responsibilities to ensure that the law is applied uniformly in decisions based on similar facts and that the defendant's representation is within constitutionally acceptable parameters. This is especially critical because the Sixth Amendment right to assistance of counsel is predicated on the assumption that counsel "plays the role necessary to ensure that the trial is fair." Strickland, 466 U.S. at 685, 104 S.Ct. 2052. "The Sixth Amendment... envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." Id. (emphasis supplied).
In this case, the Second District appears to have agreed with the trial court's finding as to deficient performance of trial counsel, which is the first prong of Strickland. See Stephens, 707 So.2d at 759; see also Steel v. State, 684 So.2d 290 (Fla. 4th DCA 1996) (finding deficient performance where counsel confused evidence in two cases and cross-examined a witness without verifying critical facts). Nevertheless, based on its "assessment of the evidence," the Second District disagreed that the deficient performance affected "the fairness and reliability of the trial." Stephens, 707 So.2d at 759.
Although the Second District properly recognized that it had an independent role in reviewing the trial court's legal conclusions as to both Strickland prongs, the Second District erroneously relied on Kennedy v. State, 547 So.2d 912 (Fla.1989), in reaching its conclusion as to the effect of the deficiency on the second prong of Strickland. See Stephens, 707 So.2d at 759. Unlike Kennedy, in which this Court affirmed the trial court's finding, the defense counsel's performance in this case was not a matter of trial strategy.
The trial court's detailed findings of fact in this case explain how counsel's failure to adequately inform the jury of the *1035 date the photograph was taken resulted in confusing testimony. In reaching its conclusion that the defendant's defense was "extremely weak," the Second District improperly failed to afford deference to the trial judge's factual findings or accord any weight to the trial judge's superior vantage point in having observed the trial. The Second District failed to focus on the fact that defense counsel, by his substandard performance, deprived defendant of his sole defense and the opportunity to corroborate the defense through photographs and medical witnesses.
Based on the trial court's findings of fact and our review of the record, we agree with the trial court's conclusions as to both Strickland prongs and the ultimate finding of ineffective assistance of counsel. We therefore quash Stephens and remand this case with directions to reinstate the trial judge's order vacating the convictions and sentences and granting a new trial.
We also recede from Grossman to the extent it is contrary to this decision and reaffirm the standard of review announced in our earlier decision in Rose.
It is so ordered.
HARDING, C.J., ANSTEAD, J., and KOGAN, Senior Justice, concur.
SHAW, J., concurs in result only.
OVERTON, Senior Justice, concurs in result only with an opinion, in which WELLS, J., concurs.
WELLS, J., concurs in part and dissents in part with an opinion.
OVERTON, Senior Justice, concurring in result.
While I agree with the result, I emphatically dissent from the analysis because I believe the majority opinion substantially confuses the responsibility of trial courts and fails to emphasize a major factor of discretionary authority the trial courts have in determining whether defective conduct adversely affects the jury.
In this instance, the trial court and the district court of appeal both agreed the presentation of evidence for the defendant by his counsel was deficient. The trial judge, in his order, noted the deficiency was compounded by the actions of the state's attorney. He concluded this conduct "prejudiced the Defendant to the extent the Defendant was deprived of a fair trial." I emphasize the trial judge was there, he saw, he heard, and he felt the effect of the evidence on the jury.
The district court of appeal, on the other hand, held:
Our assessment of the evidence leads us to the conclusion that any alleged deficiency on the part of Stephens' counsel did not affect the fairness and reliability of the trial so as to undermine confidence in the outcome. See Kennedy v. State, 547 So.2d 912 (Fla.1989). Our conclusion is only bolstered by the extremely weak nature of Stephens' questionable police brutality defense, which was uncorroborated by any other evidence.
Stephens, 707 So.2d at 759. The appellate court judges were not there, they did not see, and they could not feel the effect of the evidence on the jury. I find, under the state of this record, it was within the discretionary authority of the trial court to determine whether the conduct affected the jury to the extent that the defendant was prejudiced, and the abuse of discretion reasonableness test should have been applied by the district court of appeal.
There are two standards of review applicable in this case. The first is the proper application of legal principle to the question of whether the conduct was defective. This review addresses an issue of law and requires the appellate court to determine whether there is substantial competent evidence in the case to support the trial court's determination that the conduct was defective.
The second standard of review to be applied is for the appellate court to apply *1036 the reasonableness test to the discretionary act of the trial judge in his determination of the effect of the deficient conduct on the jury. The discretionary standard of review applies in this instance because there is no rule that makes this type of conduct either prejudicial or not prejudicial as a matter of law, and it is consequently within the trial court's discretion to determine whether the defective conduct of defense counsel in these circumstances prejudiced this defendant.
My very deep concern is that the majority of this Court in overruling Grossman v. Dugger, 708 So.2d 249 (Fla.1997), has determined that it no longer trusts trial judges to exercise proper judgment in weighing conflicting evidence and applying existing legal principles. Further, in my view, it confuses the standard of appellate review and appears to allow a review of decisions applying rules of law without applying the substantial competent evidence rule in the analysis. As important, I believe it confuses discretionary action and authority of trial judges.
I am deeply concerned that the effect of this decision will confuse both trial courts and district courts of appeal on what the law is and the proper standard of review for these types of matters.
WELLS, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur in the result reached by the majority. However, I do not join in the majority opinion or in receding from Grossman v. Dugger, 708 So.2d 249 (Fla. 1997). I believe the disagreement that the majority now expresses with this Court's precedent is substantially semantic, that it is unnecessary, and that it is neither appropriate nor helpful to create an impression of uncertainty about that precedent.
NOTES
[1] In recognition of the Strickland principles, federal courts have almost universally applied an independent standard of review to ineffective assistance of counsel claims, while giving deference to the trial court's factual findings. See, e.g., Collier v. Turpin, 177 F.3d 1184, 1198 (11th Cir.1999); Moody v. Johnson, 139 F.3d 477, 483 (5th Cir.), cert. denied, 525 U.S. 940, 119 S.Ct. 359, 142 L.Ed.2d 297 (1998); Castro v. Ward, 138 F.3d 810, 829 (10th Cir.), cert. denied, 525 U.S. 971, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998); LaGrand v. Stewart, 133 F.3d 1253, 1269-70 (9th Cir.), cert. denied, 525 U.S. 971, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998); Groseclose v. Bell, 130 F.3d 1161, 1164 (6th Cir.1997), cert. denied, 523 U.S. 1132, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998).
[2] We recognize that this Court has been inconsistent in its approach to the standard of review of ineffective assistance of counsel claims. Compare Rivera v. State, 717 So.2d 477, 482 (Fla.1998); Van Poyck v. State, 694 So.2d 686, 689-98 (Fla.1997); Breedlove v. State, 692 So.2d 874, 877-78 (Fla.1997); Clark v. State, 690 So.2d 1280, 1282 (Fla. 1997), with Diaz v. Dugger, 719 So.2d 865, 868 (Fla.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1580, 143 L.Ed.2d 675 (1999); Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993); Hudson v. State, 614 So.2d 482, 483 (Fla.1993); Phillips v. State, 608 So.2d 778, 782 (Fla. 1992).
[3] See, e.g., United States v. Bajakajian, 524 U.S. 321, 336 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (the question of whether a fine is "constitutionally excessive" as a matter of law must be reviewed independently, with deference to the lower court's factual findings); Ornelas v. United States, 517 U.S. 690, 697, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (requiring independent review of the lower court's legal conclusions on reasonable suspicion and probable cause, with due deference to the lower court's findings of fact and inferences to be drawn from those facts); Miller v. Fenton, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (holding that although a state court's conclusions on factual questions are entitled to a presumption of correctness, the ultimate issue of the voluntariness of a confession is a legal question requiring independent review).
[4] For this reason, we do not agree that Blanco v. State, 702 So.2d 1250 (Fla.1997), controls the outcome in this case. As the State points out, Blanco involved the standard of review of a trial court's conclusions on a newly discovered evidence claim. 702 So.2d at 1252. Therefore, Grossman v. Dugger, 708 So.2d 249, 250 (Fla.1997), which was an ineffective of assistance of counsel claim, should have followed our prior decision in Rose v. State, 675 So.2d 567, 571 (Fla.1996), on the standard of review, rather than relying on Blanco.